N

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>      Plaintiff,<br><br>   v.<br><br>ASTRO PAK CORPORATION, a Delaware corporation,<br><br>      Defendant. | Case No.: 2:23-cv-04769<br><br>**CONSENT DECREE** |

**CONSENT DECREE**

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Astro Pak Corporation ("Defendant") owns and operates a facility at 12201 Pangborn Ave., Downey, CA 90241 ("Facility").

**WHEREAS**, the Facility's industrial activities consist of precision cleaning and passivation services. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3471, covering electroplating, plating, polishing, anodizing, and coloring.

**WHEREAS,** stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ, 2015-0122-DWQ, and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring

1

1 implementation plan ("MIP"), (2) control pollutant discharges using, as applicable,
2 best available technology economically achievable ("BAT") or best conventional
3 pollutant control technology ("BCT") to prevent or reduce pollutants through the
4 development and application of Best Management Practices ("BMPs"), which must
5 be included and timely updated in the SWPPP, (3) reduce and eliminate discharges
6 necessary to comply with any and all applicable Water Quality Standards ("WQS"),
7 and (4) implement a monitoring and reporting program designed to assess compliance
8 with the Permit;

9 **WHEREAS**, on April 13, 2023, Plaintiff issued a notice of intent to file suit
10 ("60-Day Notice") to Defendant and its registered agent, and on March 23, 2023
11 issued the same to the Administrator of the United States Environmental Protection
12 Agency ("EPA"), the Executive Director of the State Water Resources Control Board
13 ("State Board"), the Executive Director Los Angeles Regional Water Quality Control
14 Board ("Regional Board"), and the Regional Administrator of EPA Region IX,
15 alleging violations of the Clean Water Act and the General Permit Water Quality
16 Order 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ and Order
17 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method
18 Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3)
19 Statewide Compliance Options Incentivizing On-Site or Regional Storm Water
20 Capture and Use, at the Facility;

21 **WHEREAS**, on June 16, 2023, LA Waterkeeper filed a complaint against
22 Defendant in the Central District of California, Civil Case No.2:23-cv-04769
23 ("Complaint");

24 **WHEREAS**, Defendant maintains that an overwhelming majority of the
25 pollutants discharged from the Facility are the result of aerial deposition caused by
26 the neighboring Kelterite Facility located at 12231 Pangborn, Ave, Downey, CA
27
28

2

90241 (hereafter "Kelterite"), most notably, iron, aluminum, and TSS, which are the pollutants that have exhibited exceedances in sampling data.

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the San Gabriel River. ("Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS,** all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

1  **I. OBJECTIVES**

2  6.      It is the express purpose of the Setting Parties through this Consent
3  Decree to further the objectives of the Clean Water Act, and to resolve all issues
4  alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives
5  include compliance with the provisions of this Consent Decree, compliance with all
6  terms and conditions of the General Permit, and compliance with all applicable
7  sections of the CWA.

8  7.      In light of these objectives and as set forth fully below, Defendant agrees
9  to comply with the provisions of this Consent Decree, terms and conditions of the
10 General Permit, and all applicable sections of the CWA at the Facility.

11 **II. AGENCY REVIEW AND CONSENT DECREE TERM**

12      **A. AGENCY REVIEW OF CONSENT DECREE**

13 8.      Agency Review. Plaintiff shall submit this Consent Decree to the United
14 States Department of Justice and the EPA (the "Federal Agencies") for agency review
15 consistent with 40 C.F.R. § 135.5. The agency review period ("Agency Review
16 Period") expires forty-five (45) calendar days after receipt by the Federal Agencies,
17 as evidenced by certified return receipts. In the event that the Federal Agencies object
18 to entry of this Consent Decree or to any portion of this Consent Decree, the Parties
19 agree to meet and confer to attempt to resolve the issue(s) raised by the Federal
20 Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal
21 Agencies in their comments, the Parties agree to expeditiously seek a settlement
22 conference with the assigned Magistrate Judge to resolve any issue(s).

23 9.      Court Notice. Plaintiff shall notify the Court of the receipt date by the
24 Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's
25 calendar with the 45-day review period.

26

27

28

4

1    10.    Entry of Consent Decree. Following expiration of the Federal Agencies'
2  45-day review period, Plaintiff shall submit the Consent Decree to the Court for
3  entry.

4              **B. DEFINITIONS**

5    11.    Unless otherwise expressly defined herein, terms used in this Consent
6  Decree which are defined in the CWA or in regulations or rules promulgated under
7  the CWA have the meaning assigned to them in the statutes or regulations or rules.
8  Whenever terms listed below are used in this Consent Decree, the following
9  definitions apply:

10              a. "BAT" means the Best Available Technology Economically Achievable.

11              b. "BCT" means the Best Conventional Treatment Technology.

12              c. "BMPs" means Best Management Practices.

13              d. "Consent Decree" means this Consent Decree and any attachments or
14                 documents incorporated by reference.

15              e. "Day" means a calendar day. In computing any period of time under this
16                 Consent Decree, where the last day of such period is a Saturday, Sunday,
17                 or Federal or State Holiday, the period runs until the close of business on
18                 the next day that is not a Saturday, Sunday, or Federal or State Holiday.

19              f. "Discharge Point" means each outfall and discharge location designated
20                 in the then-current SWPPP for the Facility.

21              g. "Effective Date" means the effective date of this Consent Decree, which
22                 shall be the date of execution by the Parties.

23              h. "Level 2 ERA Action Plan" means the Level 2 ERA Action Plan as
24                 described in Section XII.D.1.a-e of the General Permit.

25              i. "Level 2 ERA Technical Report" means the Level 2 ERA Technical
26                 Report as described in Section XII.D.2 of the General Permit.

27              j. "MIP" means a Monitoring Implementation Plan.

28

5

k. "Non-Industrial Pollutant Source Demonstration" means the Non-Industrial Pollutant Source Demonstration as described in Section XII.D.2.b.i-v of the General Permit.

l. "PPT" means Pollution Prevention Team.

m. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

n. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p. "SWPPP" means a Storm Water Pollution Prevention Plan.

q. "Term" means the period between the Effective Date and the "Termination Date."

r. "Termination Date" means the latest of:

    i. June 30 following one (1) year from the Effective Date;

    ii. seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following one (1) years after the Effective Date; or

    iii. seven (7) calendar days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

s. The "Termination Date" shall be extended by six (6) months in the event that the Action Plan requirements specified in paragraph 22 are triggered.

t. "Wet Season" means the seven-month period beginning October 1st of any given calendar year and ending April 30th of the following calendar year.

6

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. ERA REPORTING & NON-INDUSTRIAL POLLUTANT SOURCE DEMONSTRATION

12.    Level 2 ERA Action Plan and Level 2 ERA Technical Report. Defendant shall prepare and certify a Level 2 ERA Action Plan and Level 2 ERA Technical Report for Iron and Aluminum for the 2022-2023 Reporting Year (collectively, "Level 2 Documents"), which shall include, at minimum, a Non-Industrial Pollutant Source Demonstration. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Level 2 Documents to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the Level 2 Documents, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the Level 2 Documents, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

### B. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

13.    Rain Gauge/Sensor. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

14.    Structural and Non-Structural BMPs for the Facility: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

a. During the wet season, implement a sweeping program using a PM-10 compliant street sweeper on all paved areas at least twice per month, and employ hand sweeping in areas a mechanical sweeper cannot access;

b. Prior to the start of the Wet Season, annually by September 15th, employ and secure new wattles containing metal-adsorbing media or biochar downstream of Catch Basin 001 and 002, to treat stormwater surcharged from the below ground retention vaults during times when runoff exceeds the retention capacity;

c. During the Wet Season, as necessary, replace the synthetic media or biochar-based wattles at the drain inlets when degraded or ineffective;

d. Institute a formal pre-rain protocol throughout the Wet Season, involving inspection of any filters, socks, and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained debris bins and trash cans under cover; and

C. SAMPLING AT THE FACILITY

15.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from Qualifying Storm Events that produce a discharge from the spillway of the infiltration basin during regular facility business hours. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. Any failure to collect samples as required by this Consent Decree, including without limitation as a result of insufficient discharge, shall be documented, including by taking photographs, and submitted to LA Waterkeeper by email, along with rain gauge/sensor data for the data when the sample should have been collected but was not, within five (5) days of a written request for such records by LA Waterkeeper.

8

1    16.    Sampling Parameters: All samples collected pursuant to this Consent
2  Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

3    17.    Laboratory and Holding Time. Except for pH samples, delivery of all
4  samples to a California state certified environmental laboratory for analysis within
5  allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be
6  completed onsite using a calibrated portable instrument for pH in accordance with the
7  manufacturer's instructions.

8    18.    Detection Limit: Defendant shall request that the laboratory use
9  analytical methods adequate to detect the individual contaminants at or below the
10  values specified in the General Permit and Table 1 below.

11    19.    Reporting: Defendant shall provide complete laboratory results of all
12  samples collected at the Facility to SMARTS in accordance with the General Permit,
13  and shall provide copies to LA Waterkeeper within five (5) days of receiving the
14  laboratory report with the results.

15    **D. REDUCTION OF POLLUTANTS IN DISCHARGES**

16    20.    Table 1 Numeric Limits: Defendant shall develop and implement BMPs
17  to reduce pollutants in storm water at the Facility to levels below those in Table 1.

18    **TABLE 1**

| Analytes | Values | Source of Limit |
|----------|--------|-----------------|
| Zinc (Zn) | 0.26 (mg/L) | NAL |
| N+N | 0.68 (mg/L) | NAL |

22    21.    Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows:
23  where the concentration of any pollutant in any two (2) QSEs from the Facility
24  exceeds any numeric limit contained in Table 1. An Exceedance shall constitute a
25  violation of this Consent Decree.

26    22.    Action Plan for Table 1 Exceedances: As of the Effective Date, and for
27  the remainder of the Term, if storm water samples demonstrate an Exceedance as

28

9

1  defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for
2  reducing and/or eliminating the relevant discharge of pollutants for the Facility
3  ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper
4  within thirty (30) days of the receipt of the laboratory report demonstrating the
5  Exceedance, as applicable.

6          a. Action Plan Requirements. Each complete Action Plan submitted shall
7             include at a minimum: (1) the identification of the contaminant(s)
8             discharged in excess of the numeric limit(s); (2) an assessment of the on-
9             site and/or off-site sources of each contaminant exceedance; (3) the
10            identification of additional BMPs that shall be implemented to achieve
11            compliance with the numeric limit(s), as well as the design plans and
12            calculations of these additional BMPs; and (4) time schedules for
13            implementation of the proposed BMPs. The time schedule(s) for
14            implementation shall ensure that all BMPs are implemented as soon as
15            possible, but in no event later than ninety (90) days following the
16            submission of the Action Plan, unless a later implementation date is
17            mutually agreed upon by the Settling Parties. Defendant shall notify LA
18            Waterkeeper in writing when an Action Plan has been implemented.
19         b. Action Plan Proposed BMPs: The following BMPs should generally be
20            evaluated for inclusion in Action Plans to attain the Table 1 levels in the
21            Facility's storm water discharges:
22                i. Hydrologic Controls: Installation of additional berms or
23                   equivalent structural controls necessary to reduce or prevent
24                   storm water from flowing off site other than through the
25                   engineered storm water conveyance system or storm water
26                   retention or treatment facilities.
27
28

10

ii. Sweeping: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii. Treatment Systems: Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv. Evaluation of Existing BMPs: Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c. Action Plan Review: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 27.b.i below.

11

e. Action Plan Payments: Defendant shall pay One Thousand Five Hundred Dollars ($1,500.00 ) each time an Action Plan is submitted to LA Waterkeeper. Payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**E. VISUAL OBSERVATIONS**

23. Storm Water Discharge Observations: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

24. Monthly Visual Observations: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

12

1    25.   Visual Observations Records: Defendant shall maintain observation
2 records, including photographs, to document compliance with Paragraphs 24 and 25.
3 Such records shall include, but not be limited to, the persons who completed the
4 inspection, the date of the inspection, and notes sufficient to describe the completed
5 activity and all observations thereof, including but not limited to: (i) whether BMPs
6 are in an adequate condition; (ii) whether any repair, replacement, or operation and
7 maintenance is needed for any BMPs; (iii) other conditions that have the potential to
8 lead to pollutant loading in storm water discharges; and (iv) photographs of all the
9 foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records
10 within seven (7) days of receipt of a written request from LA Waterkeeper for those
11 records.

12    26.   Employee Training Program: Within forty-five (45) days of the Effective
13 Date, Defendant shall develop and implement an employee training program that
14 meets the following requirements and ensures (1) that there is a sufficient number of
15 employees at the Facility designated to achieve compliance with the General Permit
16 and this Consent Decree ("Designated Employees"), and (2) that these Designated
17 Employees are properly trained to perform the activities required by the General
18 Permit and this Consent Decree ("Training Program"):

19       a. Language. The training and training materials shall be available and
20          offered in the language(s) in which relevant employees are fluent. If
21          necessary, Defendant shall provide a translator or translators at all
22          trainings where such translation is likely to improve staff comprehension
23          of the Training Program and improve compliance with this Consent
24          Decree and the General Permit;

25       b. Training shall be provided by a Qualified Industrial Storm Water
26          Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit)
27          familiar with the requirements of this Consent Decree and the General

13

Permit. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

c. Sampling Training: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

d. Visual Observation Training: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

e. Non-Storm Water Discharge Training: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

f. Employees: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

g. The Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within ten (10) business days of receipt of a written request;

h. Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP: Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

14

27.  SWPPP Revisions:

a.  Initial SWPPP Revisions: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within forty-five (45) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

    i.  A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

    ii.  A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

    iii.  Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

    iv.  A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

    v.  A MIP as required by sections XI and X.I of the General Permit;

    vi.  A designation (by position/title) of employees for specific SWPPP implementation responsibilities, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

    vii.  A Training Program as described above at Paragraph 26.

b.  Additional SWPPP Revisions:

15

i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii. Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c. Review of SWPPP: For any SWPPP updates pursuant to Paragraph 27(a) and 27(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if

16

1                          any) into each revised SWPPP, Defendant shall upload the SWPPP to

2                          SMARTS.

3

### F. COMPLIANCE MONITORING AND REPORTING

4        28.    If an Action Plan is required pursuant to Paragraph 22 above, then LA

5 Waterkeeper may conduct a site inspection ("Site Inspection") thirty (30) days upon

6 receipt of Defendant's complete Action Plan for the purpose of evaluating the Action

7 Plan. Any Site Inspection shall occur during normal business hours, and LA

8 Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior

9 to a Site Inspection. For any Site Inspection requested to occur in wet weather,

10 Plaintiff shall be entitled to adjust timing or reschedule during normal business hours

11 in the event the forecast changes and anticipated precipitation appears unlikely, and

12 thus frustrates the purpose of visiting the Facility in wet weather. Notice will be

13 provided by electronic mail to the individual(s) designated below at Paragraph 53.

14 LA Waterkeeper shall be permitted to take photographs or video recording during any

15 Site Inspection.

16        29.    Document Provision. During the Term, Defendant shall notify and

17 submit documents to LA Waterkeeper as follows:

18            a.    Defendant shall copy LA Waterkeeper on all compliance documents,

19                 monitoring and/or sampling data, written communications and/or

20                 correspondences, or any documents related to storm water quality at the

21                 Facility that are submitted to the Regional Board, the State Board, and/or

22                 any state or local agency, county or municipality;

23            b.    Within three (3) business days of receipt by Defendant, send to LA

24                 Waterkeeper any compliance document, inspection report, written

25                 communication and/or correspondence, or any document related to storm

26                 water quality at the Facility received by Defendant from the Regional

27                 Board, the State Board, and/or any state or local agency, county,

28

17

1                    municipality. Defendant shall mail paper copies or email electronic

2                    copies of documents to LA Waterkeeper at the relevant notice address

3                    contained below.

4         30.    Compliance Monitoring. Defendant agrees to partially defray costs

5  associated with Plaintiff's monitoring of Defendant's compliance with this Consent

6  Decree during the Term by paying Three Thousand Dollars ($3,000.00). In the event

7  that there is a Site Inspection in a given year as a result of an Action Plan, pursuant to

8  Paragraph 28 above, Defendant shall reimburse LA Waterkeeper an additional One

9  Thousand Five Hundred Dollars ($1,500) per Site Inspection during such year.

10  Payment shall be made within thirty (30) days of the Effective Date, and within thirty

11  (30) days after any additional Site Inspection, as applicable. The payment shall be

12  made via check, made payable to: "Los Angeles Waterkeeper" via certified mail,

13  return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E

14  2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required

15  under this Paragraph will constitute breach of the Consent Decree.

16               **G. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS,**

17               **STIPULATED PENALTIES, AND INTEREST**

18         31.    Environmental Mitigation Project: To fund environmental project

19  activities that will reduce or mitigate the impacts of storm water pollution from

20  industrial activities occurring in watersheds tributary to the San Gabriel River and/or

21  San Pedro Bay, Defendant agrees to make a payment totaling Five Thousand Dollars

22  ($5,000) to the Rose Foundation made within thirty (30) days of the Effective date,

23  payable to the Rose Foundation for Communities and the Environment and sent via

24  overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

25  Failure to submit payment as required under this Paragraph will constitute breach of

26  the Consent Decree.

27

28

                                    18

32. <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Thirty Thousand Dollars ($30,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Effective Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to 4030 Martin Luther King Jr. Way, Oakland, California 94609. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

## IV. DISPUTE RESOLUTION

33. This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

34. <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

35. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 34, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

19

1    36.    In resolving any dispute arising from this Consent Decree before the
2  Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to
3  the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §
4  1365(d), and applicable case law interpreting such provisions, or as otherwise
5  provided for by statute and/or case law.

6  ## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

7    37.    Plaintiff's Waiver and Release of Defendant. In consideration of the
8  above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf
9  and on behalf of its officers and directors, release Defendant, its officers, directors,
10  managers, employees, members, parents, subsidiaries, divisions, affiliates, successors
11  or assigns, agents, attorneys and other representatives, from and waives all claims
12  that were raised in the 60-Day Notice and/or the Complaint up to and including the
13  Termination Date of this Consent Decree.

14    38.    Defendant's Waiver and Release of Plaintiff. In consideration of the
15  above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf
16  and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and
17  each of their successors or assigns, release Plaintiff, its officers and directors, from
18  and waives all claims related to the 60-Day Notice and/or the Complaint up to and
19  including the Termination Date of this Consent Decree.

20    39.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's
21  rights to address or take any position that it deems necessary or appropriate in an
22  informal or formal proceeding before the State Board, Regional Board, EPA, or any
23  other judicial or administrative body on any matter relating to Defendant's
24  compliance at the Facility with the Stormwater Permit or the Clean Water Act
25  occurring or arising after the Effective Date.

26
27
28

20

# VI. MISCELLANEOUS PROVISIONS

40. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

41. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

42. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

43. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

44. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

45. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written

21

1 agreements, covenants, representations, and warranties (express or implied)
2 concerning the subject matter of this Consent Decree.

3     46.   Severability. In the event that any provision, paragraph, section, or
4 sentence of this Consent Decree is held by a court to be unenforceable, the validity of
5 the enforceable provisions shall not be adversely affected.

6     47.   Choice of Law. The laws of the United States shall govern this Consent
7 Decree.

8     48.   Diligence: Defendant shall diligently file and pursue all required permit
9 applications for the structural BMPs and shall diligently procure contractors, labor,
10 and materials needed to complete all BMPs by the required deadlines.

11     49.   Effect of Consent Decree: Compliance with this Consent Decree does
12 not mean that Defendant is complying with the General Permit, the Clean Water Act,
13 or any other law, rule, or regulation.

14     50.   Negotiated Settlement. The Settling Parties have negotiated this Consent
15 Decree, and agree that it shall not be construed against the party preparing it, but shall
16 be construed as if the Settling Parties jointly prepared this Consent Decree, and any
17 uncertainty and ambiguity shall not be interpreted against any one party.

18     51.   Modification of the Consent Decree. This Consent Decree, and any
19 provisions herein, may not be changed, waived, discharged, or terminated unless by a
20 written instrument, signed by the Parties and approved by the Court. Any request to
21 modify any provision of the Consent Decree, including but not limited to any
22 deadline(s) set forth herein, must be made in writing at least fourteen (14) days before
23 the existing deadline(s) applicable to the provision(s) proposed to be modified.

24     52.   Assignment. Subject only to the express restrictions contained in this
25 Consent Decree, all of the rights, duties and obligations contained in this Consent
26 Decree shall inure to the benefit of and be binding upon the Parties, and their
27
28

22

1  successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any
2  assignment.

3      53.    Force Majeure. Neither of the Parties shall be considered to be in default
4  in the performance of any of their respective obligations under this Consent Decree
5  when performance becomes impossible due to a Force Majeure event. A Force
6  Majeure event is any circumstance beyond a Settling Party's control, including
7  without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic,
8  public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,
9  sabotage, or terrorism; restraint by court order or public authority or agency; or action
10 or non-action by, or inability to obtain the necessary authorizations or approvals from
11 any governmental agency. A Force Majeure event shall not include normal inclement
12 weather, economic hardship, inability to pay, or employee negligence. Any party
13 seeking to rely upon this Paragraph to excuse or postpone performance shall have the
14 burden of establishing that it could not reasonably have been expected to avoid the
15 Force Majeure event and which by exercise of due diligence has been unable to
16 overcome the failure of performance. The Parties shall exercise due diligence to
17 resolve and remove any Force Majeure event.

18     54.    Correspondence. All notices required herein or any other correspondence
19 pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail
20 transmission to the e-mail address listed below, or if electronic mail is not feasible,
21 then by certified U.S. mail with return receipt, or by hand delivery to the following
22 addresses:

23
24
25
26
27
28

23

| | |
|---|---|
| If to Plaintiff: | If to Defendant: |
| Jason R. Flanders | Thomas F. Vandenburg |
| Aqua Terra Aeris Law Group | Wood Smith Henning & Berman LLP |
| 4030 Martin Luther King Jr. Way | 505 N. Brand Blvd., Suite 1100 |
| Oakland, CA 94609 | Glendale, CA 91203 |
| jrf@atalawgroup.com | tvandenburg@wshblaw.com |
| 916-202-3018 | |
| | |
| With copies to: | With copies to: |
| Los Angeles Waterkeeper | Astro Pak |
| Barak Kamelgard | Attn: Stephen Culp |
| Benjamin Harris | 12201 Pangborn Ave., |
| 360 E 2nd St., Suite 250 | Downey, CA 90241 |
| Los Angeles, CA 90012 | sculp@astropak.com |
| barak@lawaterkeeper.org | |
| ben@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

55.   If for any reason the DOJ should object to this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

1       IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2  as of the date first set forth below.

3

4  APPROVED AS TO CONTENT

5

6

7

8  Dated: _December 18_____, 2023     By: _____

9                                      Bruce Reznik

                                       Los Angeles Waterkeeper

10

11

12  Dated: _1/4_____, 2024     By: _____

                                       Ken Carroll

13                                       Astro Pak Corporation

14  APPROVED AS TO FORM

15

16                            Aqua Terra Aeris Law Group

17

18  Dated: _December 18_____, 2023     By: _____

19                                       Jason R. Flanders

                                     Attorney for Plaintiff

20                                     Los Angeles Waterkeeper

21

22                            Wood Smith Henning & Berman LLP

23

24  Dated: _January 12, 2024_____, 2023    By: _____

25                                     Thomas F. Vandenburg

26                                     Attorney for Defendant

                                     Astro Pak Corporation

27

28

1  **IT IS SO ORDERED.**
2  **FINAL JUDGMENT**

3      Upon approval and entry of this Consent Decree by the Court, this Consent
4  Decree shall constitute a final judgment between the Plaintiff and Defendant.
5

6

7  Dated: February 28, 2024          CENTRAL DISTRICT OF CALIFORNIA
8

9

10

11                          HONORABLE Stephen V. Wilson
                            United States District Court Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   26